### AMERICAN COLORTYPE CO. v. JAMES REILLY'S SONS CO.

(Supreme Court, Appellate Term. June 26, 1905.)

ELECTRICITY—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Defendant agreed to wire and install a new motor for plaintiff's printing press. After defendant had installed the motor, and made connections so that it would actuate the press, defendant's electrician, who was a nonprofessional pressman, started it up in the absence of plaintiff or his representatives, and saw everything running all right, and then increased the speed gradually until it was running at full speed, when something about the press broke. Defendant did not furnish the motor and was not requested to test it. *Held*, that defendant was liable for the damage to the press.

Scott, P. J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by the American Colortype Company against the James Reilly's Sons Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before SCOTT, P. J., and DUGRO and MacLEAN, JJ.

H. Schieffelin Sayers, for appellant.

Walter D. Makepeace (Roy C. Gasser, of counsel), for respondent.

MacLEAN, J. The defendant admits so much of the plaintiff's complaint as alleges that the defendant agreed to wire and install a motor and connect the same with a certain press in the printing

room of the plaintiff. The plaintiff further alleges that the defendant so negligently turned on the electric power while the press, dynamo, and motor were in his hands, and at the time when none of the plaintiff's employés were present, and so negligently conducted the work of installation, that it was damaged. The trial justice found the facts to be as alleged by the plaintiff, and accordingly rendered judgment in its favor, and was justified in so doing, for the electrician employed by the defendant, and called as witness by the plaintiff, testified that:

"The plaintiff had supplied a new motor, and I had to wire it. * * * I connected the new motor to the press by a belt—the same belt that was there before. I started the press. * * * I then started it at the first speed; that is, the slowest. After I started it at slow speed, I looked over everything to see if it was running, while it was running. * * * When I saw everything running all right, I speeded it up to the next speed. Then I gradually increased the speed notch by notch, to see. That is what I did. I increased the speed until something broke in the press. * * * It was running at full speed. After the break occurred I left the building. I looked at the press and saw it was damaged. * * * I am not a professional pressman."

That he testified for the defendant that his attention was not called to the fact that the pulley on the new motor was a different sized pulley from that on the old motor would seem of no importance, notwithstanding another of defendant's witnesses testified, when asked if he could tell with reasonable certainty what might have caused this break, "The only thing that I can see or know of would be the increased size of the pulley, which increased the run of the press," for, when the defendant had installed the new motor, and made the connections so that it would actuate the press, and his electrician had started it up, and "saw everything running all right," he had certainly done all that he agreed to do, and, not having furnished the new motor, was not called upon to test it, unless requested so to do—particularly by one a self-confessed nonprofessional pressman.

The judgment should be affirmed.

DUGRO, J., concurs.

SCOTT, P. J. (dissenting). I am unable to find in the case any evidence that the damage to the press was caused by an act of negligence on the part of defendant's employé. It seems to have been assumed by the learned court that the act of running the motor at full speed was the sole cause of the wrecking of the press. All that is shown by the evidence was that the break was coincident with the increase of speed, and there is nothing to exclude the possibility that there was some defect in the press itself which led to the injury. The plaintiff's contention appears to be that the mere fact of running the motor at speed was negligent. Of this there is no proof. The plaintiffs themselves furnished both the press and the motor. All the defendant was employed to do was to make the connection. It was proper that defendant should test the connection in order to see that it worked properly. If the motor was too

strong for the press, or if there was danger in running it at speed, the plaintiffs should either have warned defendant's servant of the danger, or should have left an expert pressman to superintend and oversee the testing of the connection. It did neither. It had no right to assume that defendant's employé would know that it was safe to run the motor at half or three-quarter speed, and dangerous to run it at full speed.

Judgment should be reversed and new trial ordered, with costs to appellant to abide the event.